674 So.2d 344 (1996)
STATE of Louisiana
v.
Robin Joseph BRUNET, Sr.
No. 95 KA 0340.
Court of Appeal of Louisiana, First Circuit.
April 30, 1996.
*345 Margaret S. Sollars, Houma, for Defendant-Appellant, Robin Joseph Brunet, Sr.
Stephen P. Callahan, Houma, for Plaintiff-Appellee, State of Louisiana.
Before CARTER and PITCHER, JJ., and CRAIN,[1] J. Pro Tem.
HILLARY J. CRAIN, Judge, Pro Tem.
Robin Joseph Brunet, Sr., was charged by bill of information with one count of attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1. He pled not guilty and, after trial by jury, was convicted of the responsive verdict of attempted manslaughter. The trial court sentenced him to serve a term of fifteen years imprisonment at hard labor with credit for time served. Defendant has appealed, urging four assignments of error.

Facts
On the morning of April 25, 1993, the victim, Tamatha Rodrigue, was stabbed in the lower right side of her back. Prior to the stabbing, Ms. Rodrigue and defendant were having a prolonged argument, throughout the night and early morning hours, concerning defendant's allegations that she was having an affair with his brother, that she had reported to his parole officer that he was carrying a weapon, and that it was her fault that she had a miscarriage while pregnant with his child. Ms. Rodrigue estimated that, around 5:00 a.m. to 5:30 a.m. while she was leaning over to vomit in a bucket beside her bed, defendant stabbed her. Ultimately, defendant left in Ms. Rodrigue's vehicle, saying that he would return with help, which he never did. Prior to leaving, Ms. Rodrigue observed defendant drink some water, go to the bathroom, and wash his hands and the knife. After defendant left, Ms. Rodrigue eventually made it to the door of her bedroom, where she called her daughter in the adjacent room, who summoned help around 8:00 a.m. She was taken to Terrebonne General Medical Center, where she spent four days in intensive care as well as three additional days.

Assignments of Error Numbers 1 and 2
The defendant, by these assignments, contends that the trial court erred in allowing photographs of the crime scene and testimony concerning defendant's parole to be admitted into evidence over his objections. Specifically, defendant maintains that the probative value of each is outweighed by its prejudicial effect.
La.Code of Evidence art. 401 provides:

*346 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La.Code of Evidence art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible, provided their probative value outweighs any prejudicial effect. State v. Glynn, 94-0332, p. 9 (La.App. 1 Cir. 4/7/95); 653 So.2d 1288, 1298, writ denied, 95-1153, (La. 10/6/95); 661 So.2d 464. The trial court's admission of allegedly gruesome photographs will be overturned on appeal only if the prejudicial effect of the photographs clearly outweighs their probative value. No error will be found unless the photographic evidence is so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Perry, 502 So.2d 543, 559 (La.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987). In the instant case, one photograph, depicting the amount of blood which was found on Ms. Rodrigue's mattress and sheets at the crime scene, was introduced during Dr. Mathieu's testimony to confirm his testimony that her condition was caused by severe blood loss. The photograph was certainly relevant, and its probative value outweighed any prejudicial effect.
Defendant also maintains that the trial court erred when it allowed Ms. Rodrigue to testify that she and defendant had an argument concerning allegations that she reported him to his parole officer for carrying a weapon. In a pre-trial hearing, the trial court determined that this testimony was part of the res gestae leading up to the crime. In the present case, we find that the reference to the argument regarding defendant's parole status was not improper. As noted by the trial court, this was one of the events which led up to the crime and, as such, could be viewed as probative on the issues of intent and motive. Further, we find that any indirect reference to other crimes, although none were specifically mentioned, was outweighed by the probative value of the testimony. See State v. Wilkinson, 612 So.2d 833, 835-36 (La.App. 1 Cir.1992), writ denied, 614 So.2d 1255 (La.1993). Thus, these assignments of error are meritless.

Assignment of Error Number 3
In this assignment of error, defendant contends that the trial court erred by failing to exclude an improper jury instruction containing references to "inflict great bodily harm" in its definition of attempted manslaughter.
The trial court, over defense objection, instructed the jury as follows:
Manslaughter is the killing of a human being when the defendant has the specific intent to kill or inflict great bodily harm but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his or her self control and cool reflection. (Emphasis added)
And attempt I will define for you again: is a person who has a specific intent to commit a crime or does or omits an act for the purpose of and tending directly toward accomplishing his object is guilty of an attempt to commit the crime intended.
. . . . .
Thus, in order to convict the defendant of Attempted Manslaughter you must find:
1) that the defendant had a specific intent to commit the crime of manslaughter; and,
2) the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of manslaughter.
The Supreme Court, in State v. Butler, 322 So.2d 189 (La.1975), ruled that an attempted murder required a finding of a specific intent to kill, because murder is defined as the killing of a person under certain circumstances. The Court noted:

*347 It is conceivable, however, that a deadly weapon may be used with a specific intent to maim or seriously injure, rather than to kill. In such a situation the defendant would be guilty of murder if the victim died, but would not be guilty of attempted murder if the shot or blow did not kill the victim. By the nature of the attempt definition a specific intent to commit the crime, which may be more demanding than the intent required for the completed offense, is an essential element of that offense.
State v. Butler, 322 So.2d at 192.
The gravamen of the crime of attempted second degree murder is specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. La.R.S. 14:27 and 30.1. Attempted manslaughter also requires the presence of specific intent to kill. See La.R.S. 14:27 and 31; State v. Holley, 528 So.2d 752 (La. App. 1st Cir.1988), writ denied, 536 So.2d 1213 (La.1989).
A jury instruction similar to the one presented in this case was provided in State v. Porter, 626 So.2d 476, 478 (La.App. 3 Cir. 1993). The trial judge in Porter read the statutory definition of manslaughter and then stated that the defendant had to have the specific intent to commit the crime of manslaughter. The Third Circuit noted that attempted manslaughter, like attempted second degree murder, requires a finding of specific intent to kill, a finding not necessary for a manslaughter conviction.[2] In the instant case, the trial court's instruction concerning manslaughter was deficient in that it could have led the jury to conclude that the State had to prove only the specific intent to commit great bodily harm to convict defendant of attempted manslaughter.
In State v. Butler, 322 So.2d at 193, the Supreme Court appeared to reject the notion that this instructional error is harmless. This approach was followed by the Third Circuit in State v. Pyke, 93-1506 (La.App. 3 Cir. 5/4/94); 640 So.2d 460, 465, and cases cited therein. Pyke considered the effect of the recent United States Supreme Court case of Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), on the question of harmless error. The Pyke Court compared the "specific intent to inflict bodily harm" error with the "beyond-a-reasonable doubt" error in Sullivan which the United States Supreme Court determined was a structural error and vitiated all the jury's findings. However, the Fifth Circuit, in State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95); 652 So.2d 91, 98, also referring to the Sullivan case, found that the guilty verdict rendered in that case was "surely unattributable to the error." Consequently, the Jynes Court did not reverse the conviction on the basis of the erroneous jury instruction.
We agree with the result reached by the Fifth Circuit in the Jynes case. In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302, Justice Rehnquist, writing for the court, determined that there are trial defects which are subject to the harmless error analysis, and structural defects which so affect the framework of the trial itself that they are not subject to harmless error analysis, and always result in a reversal of the conviction. In Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the court was faced with an erroneous instruction by the state trial court on reasonable doubt. The court held that a harmless error analysis can only be applied to a guilty verdict. Further, where there is an error on the burden of proof necessary to convict, there is no jury verdict within the meaning of the Sixth Amendment. Consequently, there is nothing to which harmless error can be applied.[3] The court held in Sullivan that, unlike an instruction on an erroneous presumption regarding an element of the offense, a deficient reasonable doubt instruction vitiates *348 all the jury's factual findings. Sullivan, 508 U.S. at 279, 113 S.Ct. at 2082. Although the court was referring to an erroneous instruction regarding a presumption applied to an element of the crime, rather than the element itself, the implication of the court's language is that an erroneous instruction regarding an element of the crime is distinguishable from an erroneous reasonable doubt instruction. The latter affects all the evidence presented and the weight it is given. The former affects only an element of the specific crime charged. In the instant case, the jury was presented with an additional method of determining guilt, along with the correct method. Accordingly, there is a jury verdict of guilty beyond a reasonable doubt. The only question is whether the verdict is based on the correct element, specific intent to kill, or on the incorrect element, specific intent to commit great bodily harm. If the jury verdict is surely unattributable to the instruction that attempted manslaughter can be based upon specific intent to commit great bodily harm, rather than specific intent to kill, there is harmless error. Consequently, unlike the situation involving reasonable doubt where there is no jury verdict, there is one here, and a harmless error review is appropriate.
Our review of the record convinces us that the verdict was surely unattributable to the error. Like the situation in Jynes, there was only one intended victim. Unlike the situation in State v. Butler, where the victim was cut numerous times on the face, eyes, arms and back, the victim here was stabbed in the kidney area so deep, that the wound penetrated up into the chest, maybe puncturing a lung. Additionally, after stabbing the victim the defendant left, assuring her he would return with help but never doing so, even though the circumstances indicated that the victim needed help to survive.
We have no doubt that the jury verdict was based on defendant's having a specific intent to kill. The erroneous instruction that a verdict of attempted manslaughter could be based on an intent to do great bodily harm was surely unattributable to the verdict.
This assignment of error has no merit.

Assignment of Error Number 4
In this assignment, defendant argues that his motion for post-verdict judgment of acquittal should have been granted because the verdict was contrary to the law and evidence presented at trial. Our analysis of the sufficiency of the evidence, in accordance with State v. Hearold, 603 So.2d 731 (La. 1992), follows.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). (Emphasis in original) See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). When a defendant is charged with a greater offense but convicted of a lesser offense, and the elements of the lesser crime are included in the definition of the greater crime, evidence sufficient to convict of the greater crime is sufficient to convict of the lesser and included offense. If the evidence at trial would have supported a finding of guilt of the greater offense, it is not necessary to determine whether the evidence adduced at trial was tailored to the lesser and included offense. State v. Holley, 528 So.2d at 755.
In the instant case, the record reveals that Ms. Rodrigue had seen defendant during their argument pacing her bedroom prior to the attack with a knife, which was approximately six inches long. Dr. Mathieu testified that Ms. Rodrigue was stabbed by defendant in the lower right side of her back, over the lower ribs in what is usually considered the kidney area. Further, the wound penetrated up into her chest area and may have punctured a lung. Over 350 cc's of blood (a little over a pint) was drained from Ms. Rodrigue's lung during the course of her hospital stay. Thus, Ms. Rodrigue required two units of blood. Dr. Mathieu testified that he believed the wound was life-threatening.
In State v. Butler, 322 So.2d at 194, the Supreme Court held that:

*349 [T]he evidence also indicates that the accused inflicted with a knife serious injuries upon the victim, of which she nearly died. A properly instructed jury might reasonably infer, as a fact, the specific intent to kill: Under all the circumstances shown, an intent to kill might be reasonably implied from the intentional use of a deadly weapon to produce injuries involving serious risk of death.
Facts similar to those presented in the instant case were found sufficient to support a specific intent to kill in State v. Tauzier, 569 So.2d at 14, and State v. Dean, 528 So.2d 679 (La.App. 2 Cir.1988).
Based on our review of the record and the jurisprudence, we find, after viewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found that defendant had the specific intent to kill Ms. Rodrigue; thus, the essential elements of attempted second degree murder, the greater offense, have been proven. Therefore, defendant is not entitled to an acquittal based on insufficiency of the evidence.
This assignment of error has no merit.
Conviction and Sentence AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Other courts of appeal have held likewise. See State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95); 652 So.2d 91; State v. Salone, 605 So.2d 229 (La.App. 2 Cir.1992); and State v. Tauzier, 569 So.2d 14 (La.App. 4 Cir.1990).
[3] The court indicated that, if the structural/trial defect analysis were used, this would be a structural defect. However, there is no indication that the error is structural simply because it is a jury instruction error without regard to the substance of the instruction.